UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IRA NEWMAN, et al.,

                 Plaintiffs,

- against -

STATEN ISLAND UNIVERSITY HOSPITAL,
et al.,

                 Defendants.
-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

98 CV 4121 (CLP)

On June 9, 1998, plaintiffs Ira Newman and Toni Newman commenced this medical malpractice action against defendant Staten Island University Hospital (the "Hospital") and individual defendants Jerzy Macura, M.D. and Mark Williams, M.D. (collectively, the "doctors"). Plaintiffs allege that defendants failed to properly perform a gastric bypass procedure on Mr. Newman and failed to provide proper care to Mr. Newman following his surgery.

By Notice of Motion dated October 6, 2003, defendants moved for summary judgment, seeking to dismiss this action based on (1) plaintiffs' lack of legal capacity to sue and (2) judicial estoppel stemming from plaintiffs' failure to disclose this lawsuit as a contingent asset in their Chapter 7 bankruptcy petition.

Following the initial briefing of the issues, plaintiffs requested and were granted leave to file a motion before the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), seeking to reopen the Chapter 7 proceedings. This Court held resolution of defendants' motion for summary judgment in abeyance pending the outcome of those bankruptcy proceedings. The Bankruptcy Court subsequently issued an Order amending plaintiffs' petition

for Chapter 7 bankruptcy to add this lawsuit as an asset, and plaintiffs' counsel moved to substitute the Trustee in Bankruptcy (the "Trustee") as plaintiff. However, defendants continue to seek dismissal of this action in its entirety.

For the reasons set forth below, this Court grants defendants' motion to dismiss the Newmans as plaintiffs, grants plaintiffs' application to substitute the Trustee as plaintiff, and denies defendants' motion to dismiss the action.

## FACTUAL BACKGROUND

From April 16, 1997 through May 12, 1997, plaintiff Ira Newman, a 51-year-old male with a history of morbid obesity and high blood pressure, was a patient at the Hospital. (Compl. ¶¶ 1, 7, 10).[1] On April 16, 1997, Dr. Macura, with the assistance of Dr. Williams, performed a Roux en-Y gastric bypass procedure with 150 centimeters lumen on Mr. Newman. (Id. ¶ 2). Following the operation, plaintiff developed respiratory failure and an abdominal wound infection, causing bilious fluid to leak into his stomach. (Id. ¶ 11). On April 19, 1997, the doctors performed an exploratory laparoscopy, evacuating two and a half liters of bilious fluid from plaintiff's stomach and placing a gastrostomy tube in his stomach. (Id.)

On April 25, 1997, Dr. Macura performed a second surgery to close the abdomen again with a Marlox graft and Prolene sutures. (Id.) The sutures subsequently broke through the fascia, requiring another surgery to repair the sutures and partially remove the graft.[2] (Id.)

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed on June 9, 1998.

[2] This third surgery was not performed by either Dr. Macura or Dr. Williams; it was performed by Dr. Yee at the Hospital. (Compl. ¶ 11).

2

On May 12, 1997, plaintiff was discharged from the Hospital with an open abdominal wound and a severe abdominal wound infection. (Id.) On June 12, 1997, plaintiff underwent another surgery to close the abdominal wound and treat the infection. (Id. ¶ 12).[3]

Plaintiffs allege that defendants departed from accepted medical practice by failing to properly perform the gastric bypass, failing to provide proper medical treatment following the gastric bypass, failing to properly diagnose and treat the abdominal wound infection, and failing to obtain Mr. Newman's informed consent. (Id. ¶ 13).

PROCEDURAL HISTORY

On November 25, 1997, plaintiffs filed a Voluntary Petition for Chapter 7 Bankruptcy with the Bankruptcy Court (the "Bankruptcy proceedings"). (Evans Aff. ¶ 6, Ex. D).[4] Although the Hospital is named in several schedules and listings included in the Bankruptcy Petition package (McHugh Aff. ¶ 2(b)),[5] plaintiffs failed to list the claims that they subsequently asserted in this medical malpractice practice suit in the schedule of assets submitted in the Bankruptcy proceedings and sworn to by plaintiffs on November 24, 1997. (Evans Aff. ¶ 7).

On March 16, 1998, the Bankruptcy Court issued an Order granting plaintiffs a discharge

---

[3] This final surgery was not performed by either Dr. Macura or Dr. Williams; it was performed by Dr. David L. Abramson. (Compl. ¶ 12).

[4] Citations to "Evans Aff." refer to the Affirmation of John T. Evans, Esq., counsel for defendants, dated October 6, 2003, submitted in support of defendants' motion for summary judgment.

[5] Citations to "McHugh Aff." refer to the Affirmation of Russell T. McHugh, Esq., counsel for plaintiffs, dated February 2, 2004, submitted in opposition to defendants' motion for summary judgment.

in bankruptcy. (Id. ¶ 8, Ex. D). Neither the Bankruptcy Court's Order nor the Final Decree, dated June 5, 1998, made any mention of plaintiffs' medical malpractice claims against the Hospital or the doctors. (Id.) Plaintiffs subsequently filed the Complaint in this federal action on June 9, 1998, four days after the issuance of the Final Decree in the Bankruptcy proceedings. (Id. ¶ 9, Ex. E).

Following the completion of discovery and just weeks before the trial was scheduled to commence, defense counsel notified this Court that during the course of preparing for trial, he discovered that plaintiffs had filed for bankruptcy and had failed to list this litigation as a contingent asset in their schedule of assets submitted to the Bankruptcy Court. Since all assets of the bankruptcy estate, including any unliquidated claims or contingent assets, such as a lawsuit for damages, must be listed in the Bankruptcy Petition, see 11 U.S.C. § 541, defendants argued that only the Trustee had standing to assert plaintiffs' claims in this case, and therefore, the case must be dismissed due to plaintiffs' lack of legal capacity to sue. (Evans Aff. ¶¶ 10, 13). Defendants also claimed that under the principle of judicial estoppel, plaintiffs are barred from pursuing claims that they failed to list as contingent assets in their Bankruptcy Petition. (Id. ¶ 14).

In response, plaintiffs' counsel argued that defendants "knew 'from day one' [i.e., from the start of the pendency of the [B]ankruptcy proceedings in November of 1997] that plaintiffs were applying for bankruptcy" (McHugh Aff. ¶ 3(a) (emphasis in original)), and had "orchestrated a trap for plaintiffs by strategically failing to plead" the bankruptcy issue as an affirmative defense in their Answers, as required by Rule 9(a) of the Federal Rules of Civil Procedure. (Id. ¶ 3(b) (emphasis in original)). According to plaintiffs, defendants instead

4

proceeded to fully litigate the case without raising the lack of capacity claim until after the statute of limitations had expired. (Id. ¶¶ 3(b)-(e)). Accusing defendants of using "gamesmanship," (id. ¶ 3(f)), plaintiffs claimed that defendants "strategically" omitted copies of their Answers from the exhibits submitted in support of their motion papers because their Answers demonstrate defendants' failure to raise this issue. (Id. ¶ 5). Thus, plaintiffs asserted that defendants' motion for summary judgment should be denied on grounds of waiver and equitable estoppel. (Id. ¶ 3(f)).

On January 22, 2004, plaintiffs filed a motion before the Bankruptcy Court to reopen the Chapter 7 proceedings. (See Defs.' Letter of Feb. 13, 2004). In a letter to the Bankruptcy Court dated February 12, 2004, defendants opposed plaintiffs' motion to reopen the Bankruptcy proceedings, arguing that plaintiffs' request to reopen was "solely calculated to frustrate the present motion for summary judgment in the malpractice action." (Defs.' Letter of Feb. 12, 2004 at 2-3). This Court subsequently reserved decision on defendants' motion for summary judgment pending the Bankruptcy Court's ruling on the motion to reopen the Bankruptcy proceedings.

By letter dated August 13, 2004, plaintiffs informed this Court that the motion to reopen the Bankruptcy proceedings had been granted, and the Trustee for the Estate had been appointed. (Pls.' Letter of Aug. 13, 2004). According to plaintiffs, the Trustee was seeking to be substituted for plaintiffs in this malpractice action. (Id.) Defendants objected to substituting the Trustee for plaintiffs and continued to seek dismissal of the action on a number of grounds, including bad faith. (See Defs.' Letter of Dec. 10, 2004 at 1). The parties were given time to submit additional briefing on the issue of substituting the Trustee for plaintiffs and on plaintiffs' argument that if this action were dismissed, the Trustee could still pursue an action against defendants in state

court. (See Order of Oct. 21, 2004).

Having now received all of the parties' submissions, this Court grants defendants' motion to dismiss the Newmans as plaintiffs and preclude them from further participation as plaintiffs in this action, grants the Trustee's motion for substitution, and denies defendants' motion to dismiss the action in its entirety.

## DISCUSSION

### A. Motion to Dismiss the Newmans as Plaintiffs

#### 1. Listing of Assets in Bankruptcy Proceedings

The filing of a petition for bankruptcy creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); see Rosenshein v. Kleban, 918 F. Supp. 98, 102 (S.D.N.Y. 1996). A debtor is required to file a financial statement which includes a listing of all of the debtor's assets and liabilities with the bankruptcy court. 11 U.S.C. § 521(1); see Rosenshein v. Kleban, 918 F. Supp. at 102; see also In re Costello, 255 B.R. 110, 113 (E.D.N.Y. 2000). The assets that the debtor is required to list in the schedule include "all causes of action that can be brought by the debtor." Rosenshein v. Kleban, 918 F. Supp. at 102 (citing Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989)); see Hansen v. Madani, 263 A.D.2d 881, 882, 693 N.Y.S.2d 332, 333-34 (3d Dep't 1999) (noting that "'[u]pon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate'") (citation omitted).

The purpose of requiring disclosure of all legal and equitable assets in the schedule is to

"allow[] the trustee and the creditors to determine whether the assets, including causes of action, should be pursued on the creditors' behalf." In re Costello, 255 B.R. at 113 (citation omitted). "The interests of [] the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete." Rosenshein v. Kleban, 918 F. Supp. at 104 (citation omitted).

Once a plan of reorganization has been confirmed by the bankruptcy court, all of the property dealt with by the plan rests in the debtor "free and clear of all claims and interests of creditors." 11 U.S.C. § 1141(c). "Because undisclosed claims are not dealt with by the plan, they do not revert to the debtor free of the claims of creditors." Rosenshein v. Kleban, 918 F. Supp. at 102 (citation omitted). At the same time, however, "property that is not formally scheduled is not abandoned and therefore remains part of the estate." Id. (citation omitted). As a result, "it is well settled that a debtor's failure to list a legal claim as an asset in his or her bankruptcy proceeding causes the claim to remain the property of the bankruptcy estate and precludes the debtor from pursuing the claim on his or her behalf." George Stokes Elec. & Plumbing, Inc. v. Dye, 240 A.D.2d 919, 920, 659 N.Y.S.2d 129, 130 (3d Dep't 1997) (citation omitted).

Based on this clearly-established bankruptcy law, defendants move for summary judgment, seeking to dismiss plaintiffs' action for lack of capacity to sue because plaintiffs failed to list this medical malpractice action as an asset during the Bankruptcy proceedings. (Evans Aff. ¶¶ 10-13). Defendants contend that although the instant action was not filed until four days

7

after the final decree was entered in the Bankruptcy proceedings, plaintiffs knew about this potential lawsuit during the pendency of the Bankruptcy proceedings. (Id. ¶¶ 9, 13). Defendants point out that in addition to retaining litigation counsel on May 19, 1997, plaintiffs had photographs taken for use at trial and executed medical releases to allow counsel to access plaintiffs' medical records around the same time. (Id. ¶ 13; Defs.' Letter of Oct. 31, 2003 at 1, Ex. 1). According to defendants, plaintiffs' actions clearly establish that prior to the filing of the Bankruptcy Petition on November 25, 1997, plaintiffs were contemplating the commencement of this lawsuit and thus knew or should have known that the potential lawsuit was a contingent asset in the Bankruptcy proceedings. (Evans Aff. ¶ 13; Defs.' Letter of Oct. 31, 2003 at 1). Thus, defendants argue that there is no justifiable excuse for plaintiffs' failure to list this medical malpractice action as an asset in the Bankruptcy Petition. (See id.).

2. Lack of Capacity

In response, plaintiffs argue that because Rule 9(a) of the Federal Rules of Civil Procedure requires defendants to plead lack of capacity to sue as an affirmative defense and because defendants failed to raise the defense in their Answers, defendants have waived the defense and thus defendants' motion should be denied on the grounds of waiver. (McHugh Aff. ¶ 5; Pls.' Mem. at 2-5;[6] Pls.' Letter of Oct. 26, 2004 at 1). Plaintiffs cite to numerous cases in support of their argument that "'[t]he issue of capacity is subject to waiver if not specifically raised by negative averment.'" (Pls.' Mem. at 2 (quoting Howerton v. Designer Homes, 950

---

[6] Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law filed in opposition to defendants' motion for summary judgment, dated February 2, 2004.

8

F.2d 281, 283 (9th Cir. 1992))).[7]

However, none of the cases cited by plaintiffs deal with a situation where, as here, plaintiffs' lack of capacity to sue results from the operation of the bankruptcy laws. (See Pls.' Mem. at 2-5). The bankruptcy laws are designed to protect the interests of plaintiffs' creditors, see In re Costello, 255 B.R. at 113; Rosenshein v. Kleban, 918 F. Supp. at 104, and to vest the right to bring an undisclosed cause of action in the Trustee. See George Stokes Elec. & Plumbing, Inc. v. Dye, 240 A.D.2d at 920, 659 N.Y.S.2d at 130. Regardless of whether defendants knew or should have known of plaintiffs' failure to disclose the instant action as a contingent asset in the Bankruptcy proceedings, defendants' failure to plead lack of capacity cannot confer a right to sue on plaintiffs when bankruptcy law clearly confers standing to sue solely in the Trustee. Thus, this Court finds that the Newmans' lack of capacity to sue prevents them from participating further in this action.

B. Motion to Substitute

Although the Court finds that plaintiffs may no longer pursue the medical malpractice claims raised in this case by operation of bankruptcy laws, plaintiffs petitioned to reopen the Bankruptcy proceedings and to include this litigation as an asset covered by the Bankruptcy Petition. (See Defs.' Letter of Feb. 13, 2004). The Bankruptcy Court granted plaintiffs' application, and the Trustee now moves before this Court to be substituted as the proper party in

---

[7] Indeed, plaintiffs contend that defendants knew about the Bankruptcy proceedings "'from day one'" and orchestrated a "trap" for plaintiffs by failing to plead lack of capacity as an affirmative defense and by failing to indicate their intention to press the issue until the statute of limitations had run. (McHugh Aff. ¶¶ 3(a)-(c)).

9

interest in this case. (Pls.' Letter of Aug. 13, 2004). Citing Rules 15 and 17 of the Federal Rules of Civil Procedure, plaintiffs argue that the Court should (1) sua sponte deem the Complaint amended to substitute the Trustee as plaintiff; (2) deem plaintiffs' letter request dated October 26, 2004 to be a motion for leave to amend the Complaint; or (3) grant leave for plaintiffs to submit a formal motion seeking leave to amend the Complaint. (Pls.' Letter of Oct. 26, 2004 at 6).

Defendants argue that plaintiffs' motion to amend the pleadings to substitute the Trustee as the named plaintiff should be denied because an "inordinate delay" occurred between the time plaintiffs contemplated filing this suit, the filing of the Complaint and plaintiffs' motion to reopen the Bankruptcy proceedings and substitute the Trustee.[8] (Defs.' Letter of Dec. 10, 2004 at

---

[8] Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, once a response to a complaint has been filed, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). However, the Rule also states that "leave shall be freely given when justice so requires," id., and the Rule has been liberally construed. See Foman v. Davis, 371 U.S. 178, 182 (1962). Although the decision whether to grant a plaintiff's motion to file an amended pleading remains within the court's discretion, see Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995), an amendment should not be allowed where the amendment would cause undue delay or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. at 182; Zahra v. Town of Southold, 48 F.3d at 685; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Block v. First Blood Assocs., 988 F.2d at 350 (quoting State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

Although defendants cite Rule 15 in support of their argument that plaintiffs' motion to substitute the Trustee should be denied (see Defs.' Letter of Dec. 10, 2004 at 9-10), this Court finds that Rule 17(a) governs the analysis in this case. However, even if this Court were to analyze plaintiffs' motion under Rule 15(a), the Court would still grant plaintiffs' motion to substitute the Trustee, finding that the delay in moving to amend was not inordinate and was not attributable to the Trustee, who is the actual party seeking substitution. See discussion infra at 18 -20.

9-10). Defendants further contend that plaintiffs' motion to amend the Complaint to substitute the Trustee as a named party should be denied because plaintiffs demonstrated bad faith by bringing the instant action when plaintiffs' counsel knew or should have known that the Trustee was the proper party in interest. (Id. at 10-11).

1. Rule 17(a)

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest" and "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Fed. R. Civ. P. 17(a). The Rule contains a "relation-back" provision which states that "joinder[] or substitution [of the proper party in interest] shall have the same effect as if the action had been commenced in the name of the real party in interest." Id.; see Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. 27, 32 (E.D. Pa. 1983). Once the proper party in interest is joined or substituted pursuant to Rule 17(a), the action continues as if it had originally been commenced by the real party in interest. See Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. at 32.

Plaintiffs cite a number of cases where courts, pursuant to Rule 17(a), have permitted the trustee in bankruptcy to be substituted as plaintiff in place of the debtor where it was clear that the trustee was the real party in interest by reason of the operation of the bankruptcy laws. (Pls.' Letter of Oct. 26, 2004 at 7-8). See, e.g., Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. at 31 (finding that "[s]ince the trustee in bankruptcy is the real party in interest in this suit

11

. . . the case can proceed with the trustee substituted as plaintiff for the dismissed class of stockholders and bondholders provided the trustee files an amended complaint alleging the same cause or causes of action previously pleaded" and thus dismissing the original plaintiffs and substituting the bankruptcy trustee as plaintiff under Rule 17(a)); see also Bickford v. Ponce De Leon Care Center, 918 F. Supp. 377, 378 (M.D. Fla. 1996) (holding that the substitution of the bankruptcy trustee was appropriate under Rule 17(a) where the plaintiff's Title VII claim was filed two months after the filing of the bankruptcy petition and where the "the cause of action [was] included in the bankruptcy estate [and could have been] pursued only by the Trustee").

In Nagle, the court noted that Rule 17(a) gives the court discretion to deny leave to substitute the trustee as the real party in interest, but found no basis for concluding that "substitution prejudices the defendant in any way." Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. at 32. The court explained, "'[a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.'" Id. (quoting 6 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1501 (1st ed. 1971)).

In the instant action, substitution of the Trustee does not prejudice defendants in any way. The Trustee's claims are identical to plaintiffs' claims, the Trustee's claims concern the same conduct by defendants that was alleged in plaintiffs' initial pleadings, and neither party is required to participate in any further discovery into the underlying circumstances of the action because the relevant facts were already the subject of extensive discovery in this matter. Indeed, the case was ready to proceed to trial when defendants first raised the issue of plaintiffs' capacity

12

to pursue these claims. Moreover, as the court in Nagle noted, denial of the request to substitute the Trustee would leave plaintiffs' creditors "without a remedy and would consequently be unjust." Id. at 32.

2. Judicial Estoppel

Defendants argue that the cases cited by plaintiffs are distinguishable from the instant action because there is no evidence that the plaintiffs in either Nagle or Bickford failed to disclose the litigation as an asset in the bankruptcy estate. (Defs.' Letter of Dec. 10, 2004 at 13). Instead, defendants rely on principles of judicial estoppel to argue that substitution of the Trustee should be denied here. (Evans Aff. ¶ 14; Defs.' Letter of Dec. 10, 2004 at 11-14).

"The doctrine of judicial estoppel prevents a party from taking inconsistent positions in subsequent legal proceedings." Reciprocal Merchandising Servs. Inc. v. All Advertising Assocs., Inc., 163 B.R. 689, 696 (S.D.N.Y. 1994) (citing In re Galerie des Monnaies of Geneva, Ltd., 55 B.R. 253, 259 (Bank. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986); see also Oneida Motor Freight, Incorporated v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.), cert. denied, 488 U.S. 967 (1988) (holding that the doctrine of judicial estoppel is "distinct from that of equitable estoppel [and] applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted"). As one court in this Circuit has noted, "[t]he object is to safeguard the administration of justice by preventing litigants from playing 'fast and loose' with the courts." Reciprocal Merchandising Services, Inc. v. All Advertising Assocs., Inc., 163 B.R. at 696 (citing In re Galerie des Monnaies of Geneva, Ltd., 55 B.R. at 260).

In order to assert judicial estoppel as a defense, the party must show: "(1) an unequivocal

13

assertion of law or fact by a party in one judicial proceeding, (2) the assertion by that party of an intentionally inconsistent position of law or fact in a subsequent judicial proceeding, (3) in order to mislead the court and obtain unfair advantage as against another party." In re Roundabout Theatre Co., 131 B.R. 14, 18 (S.D.N.Y. 1991) (citation omitted). While a party need not establish prejudice in order to invoke the doctrine of judicial estoppel, see In re Galerie des Monnaies of Geneva, Ltd., 55 B.R. at 260, the courts have generally held that "intentional misconduct is a necessary element to a claim for judicial estoppel." Reciprocal Merchandising Servs. Inc. v. All Advertising Assocs., Inc., 163 B.R. at 696 (citations omitted).

In seeking to estop the Trustee from pursuing the medical malpractice claims at issue, defendants cite to Feist v. Consolidated Freightways Corporation, 100 F. Supp. 2d 273 (E.D. Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000), cert. denied, 532 U.S. 920 (2001), which, like the instant action, involved a plaintiff who commenced an action for personal injuries after emerging from Chapter 7 bankruptcy proceedings. Id. at 274-75. (See Defs.' Letter of Dec. 10, 2004 at 12). The court in Feist denied plaintiff's motion to substitute the bankruptcy trustee as the real party in interest, explaining that according to the Advisory Committee Note, substitution of the real party in interest pursuant to Rule 17(a) "'is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d at 275 (quoting Fed. R. Civ. P. 17 advisory committee note, 1966 amendment). Thus, the court noted that in order for Rule 17(a) to apply, a court is required "to determine whether or not [p]laintiff was acting in good faith when he filed this action in his own name." Id. at 276. Based upon plaintiff's testimony at his deposition and at a subsequent evidentiary hearing, the court found that plaintiff had provided

14

contradictory testimony regarding his reasons for the delay in filing his bankruptcy petition and for his aggressive pursuit of the litigation following the close of the bankruptcy proceedings. Id. at 277-80. Thus, the court concluded that plaintiff had failed to sustain his burden of establishing that when he filed the action for personal injuries in his own name, he was acting in good faith and that his actions were the result of an honest mistake. Id. at 280.

Relying on the Third Circuit's decision in Oneida Motor Freight, Incorporated v. United Jersey Bank, 848 F.2d at 419-20, the Feist court also rejected the trustee's argument that substitution of the trustee was warranted because plaintiff's creditors would suffer if the motion for substitution was denied. Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d at 280. The court in Feist explained that in Oneida, the "debtor was judicially estoppel from bringing its claim because its suit indicated a position contrary to that taken by the debtor in its Chapter 11 case." Id. (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d at 419).

Although the Feist court correctly noted that the Oneida court used the concept of judicial estoppel to bar pursuit of the debtor's claims, the situation in Oneida is distinguishable from the situation in the present action. In Oneida, the bankrupt corporate plaintiff appealed from the dismissal of its contract and tort action against United Jersey Bank (the "Bank"), one of plaintiff's principal secured creditors. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d at 415. In its schedule of assets and liabilities filed with the bankruptcy court, the plaintiff debtor listed the $7.7 million dollars which it owed to the Bank as a debt but failed to list its potential counterclaims against the Bank as a contingent asset. Id. at 417-18.

Relying on the doctrine of judicial estoppel, the Third Circuit "stop[ped] short of finding" that plaintiff debtor's failure to list its claim against the Bank in its bankruptcy petition was

15

"equivalent to an acknowledgment that [the plaintiff debtor] did not have a claim against the bank," id. at 419, but concluded that plaintiff debtor's silence constituted a legal position that was "clearly contrary" to the position the plaintiff debtor had previously asserted before the bankruptcy court. Id. Thus, in approving the plan of reorganization, the bankruptcy court and the creditors, particularly the Bank, relied on the plaintiff debtor's disclosure statement. The Oneida court concluded that allowing the plaintiff debtor to proceed against the Bank on a claim that it had failed to list in its bankruptcy petition would "work[] in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect." Id.

Neither Feist nor Oneida are controlling here. First, it is unclear whether the doctrine of judicial estoppel is even recognized in the Second Circuit. See Reciprocal Merchandising Servs. Inc. v. All Advertising Assocs., Inc., 163 B.R. at 696 (citing In re Roundabout Theatre Co., 131 B.R. at 18 n.4; David v. Showtime/The Movie Channel, Inc., 697 F. Supp. 752, 763 n.6 (S.D.N.Y. 1988); United States v. Starrett City Assocs., 605 F. Supp 262, 263 (E.D.N.Y. 1985)).[9] In this Circuit, the doctrine "has only been invoked in 'extreme cases in which the inconsistent positions have been the product of fraud or other deliberately misleading conduct.'" Reciprocal Merchandising Servs. Inc. v. All Advertising Assocs., Inc., 163 B.R. at 696 (quoting David v. Showtime/The Movie Channel, Inc., 697 F. Supp. at 763).

Moreover, in the instant case, there are several reasons why the doctrine of judicial

---

[9] But see Rosenshein v. Kleban, 918 F. Supp. at 104 (stating that "[w]ith all due respect, we are not convinced that those reservations [about the application of the doctrine of judicial estoppel] are warranted. While judicial estoppel should be applied with care so as not to impinge on a party's ability to plead alternative and inconsistent theories of its case, the Second Circuit has recognized the applicability of the doctrine to situations in which the court must protect the integrity of the judicial system").

16

estoppel should not apply. First, this case is distinguishable from Oneida, where the failure to disclose plaintiff's contingent claims against plaintiff's principal creditor resulted in the adoption of a plan of reorganization that neither the court nor the creditor would have agreed to if it had been aware of plaintiff's claims. In the instant action, by contrast, there is no reason to conclude that the Hospital was plaintiffs' principal creditor or that disclosure of plaintiffs' claims against the Hospital would have had any effect on the Bankruptcy Court's decision to approve plaintiffs' reorganization plan, except to make certain that the Trustee pursued plaintiff's claims against the Hospital on behalf of plaintiffs' creditors.

Second, even if the Second Circuit were to adopt the doctrine of judicial estoppel under the reasoning of the Third Circuit in Oneida and the court in Feist, it is unclear whether the doctrine would apply here in the absence of evidence showing an intent by plaintiffs to defraud the court. Unlike the plaintiffs in both Oneida and Feist, who arguably could be seen as "playing 'fast and loose' with the judicial system," Winmark Ltd. P'ship v. Miles & Stockbridge, 345 Md. 614, 622, 693 A.D.2d 824, 827 (1997), Mr. Newman suffered from severe medical and psychiatric problems during the relevant time period between the filing of the Bankruptcy Petition and the commencement of the instant action. (Pl.'s Aff. ¶¶ 3, 15-16).[10] These problems were triggered in large measure by the complications he experienced after his gastric bypass surgery. (Id. ¶ 3). Mr. Newman's affidavit and deposition testimony demonstrate that "by reason of the virtual overlap of [his] physical/emotion non-functioning condition during the relevant time-frame," his failure to list this action, which he did not understand to be viable until the

---

[10] Citations to "Pl.'s Aff." refer to the Affidavit of plaintiff Ira Newman, dated February 3, 2004, submitted in opposition to defendants' motion for summary judgment. (See McHugh Aff., Ex. 4).

17

middle of 1999, was the product of "inadvertent error/ignorance and [] not by reason of any intent to defraud." (Id. ¶¶ 22, 24 (emphasis in original)).

Perhaps most important, to the extent that the Feist court employed the doctrine of judicial estoppel to bar the trustee in bankruptcy from pursuing plaintiff's claims, this Court declines to apply the doctrine to bar the Trustee from pursuing the Newmans' claims in this case. The doctrine of judicial estoppel is intended to bar a party from asserting an intentionally inconsistent position in two different judicial proceedings. See In re Roundabout Theater Co., 131 B.R. at 18; see also discussion supra at 13-14. Properly applied, the doctrine of judicial estoppel would bar the Newmans from pursuing their claims if any intent to defraud or deliberately misleading conduct by plaintiffs could be shown.

However, the Newmans and the Trustee are not the same "party." The position asserted by the Newmans in the Bankruptcy proceedings is not the position asserted by the Trustee in the Bankruptcy proceedings, and the Newman's position cannot be imputed to the Trustee, who was clearly unaware of plaintiffs' failure to disclose their claims against the Hospital. The Trustee's interests in pursuing this litigation are not identical to plaintiffs' interests. The Trustee represents the interests of plaintiffs' creditors, not of plaintiffs, and it is clear that under the Bankruptcy Act, title to a "'cause of action' . . . passe[s] to the trustee in bankruptcy . . . ." Gochenour v. George & Francis Ball Foundation, 35 F. Supp. 508, 514 (S.D. Ind. 1940), aff'd, 117 F.2d 259 (7th Cir.), cert. denied, 313 U.S. 566 (1941) (citation omitted). It is the Trustee's "'right to prosecute all causes of action which could have been prosecuted by the bankrupt or debtor, had bankruptcy not intervened.'" Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. at 30 (citation omitted) (emphasis added). Applying the doctrine of judicial estoppel to prevent the Trustee from

18

asserting its right to pursue its claims because of the position taken by another party, the plaintiffs, is a misapplication of the doctrine of judicial estoppel and runs counter to the policies underlying the Bankruptcy Code.

The fact that the Bankruptcy Court permitted the Newmans' Bankruptcy proceedings to be reopened to allow the Trustee to pursue these claims reflects the Bankruptcy Court's conclusion that preclusion is not warranted here. Moreover, this Court's holding is consistent with the decisions of various other courts, including courts in this Circuit, which have concluded that while the debtor may have no right to pursue the claims that the debtor failed to list as part of the bankruptcy estate, the debtor should be given time to petition to reopen the bankruptcy proceedings to allow the trustee in bankruptcy to pursue the claims. As the court in Rosenshein noted: "[n]umerous courts have permitted the pursuit of undisclosed claims after confirmation in order to prevent an alleged wrongdoer from obtaining a windfall because the debtor failed to schedule its claims and to ensure that the creditors benefit from any recovery." Rosenshein v. Kleban, 918 F. Supp. at 103 (citations omitted). Indeed, the court in Rosenshein encouraged the plaintiffs in that case, who lacked standing to pursue their undisclosed claims, to "pursue these claims by seeking to reopen the appropriate bankruptcy proceeding so that their creditors may benefit from any recovery." Id.; see Greenheart Durawoods, Inc. v. PHF Int'l Corp., No. 91 CV 3731, 1994 WL 652434, at *5 (S.D.N.Y. Nov. 18, 1994) (staying action to allow debtor to petition bankruptcy court to reopen the proceedings because reopening the bankruptcy proceedings "would benefit [plaintiff]'s creditors and would prevent a windfall to [defendant]"); see also Miller v. Shallowford Community Hosp., Inc., 767 F.2d 1556, 1559 (11th Cir. 1985) (affirming the lower court's finding that the proceeds of an undisclosed claim became part of the

bankruptcy estate and were available to creditors once the bankruptcy petition was reopened). As the court in Gochenour noted, the Bankruptcy Act and its rules were clearly designed to protect the assets of the bankruptcy estate for the sole purpose of protecting the creditors, not for the purpose of protecting a defendant from the consequences of his actions against the debtor. Gochenour v. George & Francis Ball Foundation, 35 F. Supp. at 517.

Accordingly, this Court grants the motion to substitute the Trustee as plaintiff in the instant action. Since the Trustee has the capacity to pursue this matter, the Court denies defendants' motion to dismiss this action in its entirety.

## CONCLUSION

Accordingly, this Court grants defendants' application to dismiss the Newmans as plaintiffs, grants the application of the Trustee for substitution pursuant to Rule 17(a), and denies defendants' motion to dismiss the action.[11] The case will proceed to trial. A conference to discuss scheduling is set for July 8, 2005 at 10:00 a.m.

**SO ORDERED.**

Dated: Brooklyn, New York
June 21, 2005

Cheryl L. Pollak
United States Magistrate Judge

---

[11] To the extent that this Court requested briefing on the issue of plaintiffs' right to pursue their claims in state court (see Order of Oct. 21, 2004), there is no need to reach that issue since the real party in interest, the Trustee, will be able to pursue those claims in this Court.